# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JAMES COLE, as Chairman on behalf of the Board of Trustees of the Iron Workers Local Union No. 167 Health and Welfare Plan and Trust; The Iron Workers Local Union No. 167 Pension Plan and Trust; The Iron Workers Local Union No. 167 Apprenticeship and Training Trust Fund; and Iron Workers Local Union No. 167, | ) ) ) ) ) ) ) ) | |
| | ) | No. 2:21-cv-2165-TLP-tmp |
| | ) | JURY DEMAND |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ELITE IRON WORKS, ELITE IRON WORKS, LLC, and RUSSELL FEIVOU, | ) ) ) | |
| Defendants. | ) ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The alter ego doctrine prevents employers from manipulating the corporate form to evade labor obligations.  But most new businesses fail in the first three years.[1]  The owners of those businesses have a decision to make.  Do they start a new one?  And if so, is the new company automatically an alter ego of the first company?  The answer is no.

This case is about whether Defendant Elite Iron Works, LLC ("LLC") is the alter ego of Defendant Elite Iron Works ("EIW"), a now defunct sole proprietorship owned by Defendant

---

[1] The United States Chamber of Commerce estimates that most businesses fail in the first three years.  *Small Business Statistics*, Chamber of Commerce (last visited July 27, 2023), https://www.chamberofcommerce.org/small-business statistics/#:~:text=In%20the%20United%20States%2C%20around,that%20number%20by%20ap proximately%2032%2C000. (citing United States Bureau of Labor Statistics).

Russell Feivou ("Mr. Feivou"). If so, it is liable for the obligations of EIW. Plaintiffs are James Cole ("Mr. Cole") as Chairman and on behalf of the Board of Trustees of the Iron Workers Local Union No. 167 ("Union") Health and Welfare Plan and Trust, the Union Pension Plan and Trust, the Union Apprenticeship and Training Trust Fund, and the Union. (ECF No. 1.) They sue here to collect contributions and union dues that Defendants allegedly owe them under a collective bargaining agreement ("CBA"). (*Id.*)

In sum, Plaintiffs contend LLC is the alter ego of EIW, and is therefore bound by EIW's obligations under the CBA with the Union. (*Id.*) The Court held a bench trial on March 20 and 21, 2023. In a bench trial, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). For the reasons below, the Court finds that LLC is not an alter ego of EIW. The Court therefore **RULES** for **DEFENDANTS**.

## FINDINGS OF FACT

### I.    Undisputed Facts

The Parties stipulated to some undisputed facts in the pretrial conference. (ECF No. 54.) First joining as an apprentice in 2010, Mr. Feivou became a member of the Union in 2014 when he began working for various contractors on ironworks-related projects. (*Id.* at PageID 853; *see also* ECF No. 43-1 at PageID 280.) In 2018, he formed EIW, an ironworks business, as sole proprietor. (*Id.*) EIW's principal place of business was also Mr. Feivou's home address at 88 Rae Drive, Munford, Tennessee. (ECF No. 54 at PageID 853; *see also* ECF No. 43-1 at PageID 282.) Later, EIW entered into a CBA with the Union that required EIW to pay negotiated wages and other monthly benefit contributions. (ECF No. 54 at PageID 853.)

In January 2019, Mr. Feivou and Jonathan Glasco ("Mr. Glasco"), a former Union president who once had his own ironworks business, went into business together. (*Id.* at PageID

853.)  They formed Elite Iron Works, LLC ("LLC") as a limited liability company.  (*Id.*)  LLC, also an ironworks business, listed the same address as EIW for its address of record.  (*Id.*)  The Parties stipulate that insurance policies covering Mr. Feivou and EIW "were amended to cover [LLC]."  (*Id.* at PageID 854.)  The Parties also stipulate that LLC "has and continues to utilize employees" who were Union members.  (*Id.*)

The Parties central dispute is simple.  Defendants contend that unlike EIW, LLC did not enter into a CBA with the Union.  Plaintiffs contend that EIW and LLC are the same entity.

## II.    The Court's Findings of Fact

Building upon the undisputed facts stipulated by the Parties, the Court makes these other factual findings from the testimony at trial.[2]

### A.    Elite Iron Works as a Sole Proprietorship

As the sole proprietor of EIW, Mr. Feivou was responsible for every aspect of running the business.  (ECF No. 59 at PageID 747.)  These duties included estimating new jobs, performing labor on those jobs, and collecting payments due for completed work.  (*Id.*)  Mr. Feivou was EIW's only manager, supervisor, and decision maker.  (*Id.*)  EIW was a small-scale business with minimal cash flow.  (*Id.* at PageID 737.)  It could only complete jobs that required little upfront capital investment.  (*Id.*)  These jobs included "smaller" handrail work, and the installation of prefabricated panels supplied by a contractor.  (*Id.* at PageID 737, 757.)  As a sole proprietorship, the biggest project EIW completed was worth about $60,000.  (*Id.* at PageID 753.)  The only equipment EIW possessed was Mr. Feivou's personal truck, his $4,000 welding machine, and roughly $1,000 worth of hand tools.  (*Id.* at PageID 768, 740.)

---

[2] Most of the testimony at trial was also undisputed.

In the third quarter of 2018, EIW generated about $80,000 in revenue.  (ECF No. 59 at PageID 740.)  But expenses outpaced revenue, so he did not earn a profit.  (*See id.*)  During this period, Mr. Feivou employed up to eight Union ironworkers to complete EIW's projects.  (*Id.* at PageID 741.)  It was for this work that Mr. Feivou owed "somewhere over $10,000" in Union benefits contributions.  (*Id.* at PageID 744).  Mr. Feivou could not afford to pay the Union because EIW had not made enough money to cover its outstanding contributions.  (*Id.*)  As a result, Mr. Feivou entered into a payment plan with the Union that allowed him to pay back the sum in installations.  (*Id.* at PageID 745.)

After an unprofitable third quarter, Mr. Feivou generated little business in the fourth quarter, making only $35,000 in revenue.  (*Id.*)  So he elected not to employ any Union labor in the fourth quarter.  (*Id.*)  For all of 2018, EIW made a net profit of about $3,000.  (*Id.* at PageID 746.)  Accounting for the amounts owed to the Union however, EIW had a net loss of about $7,000.  (*Id.*)  Beyond its lack of capitalization, EIW proved an unsustainable business because of Mr. Feivou's lack of experience in running a business on his own and it failed by the end of 2018.  (*Id.*)

**B.     Elite Iron Works, LLC as a Limited Liability Company**

Upon realizing EIW's failure as a sole proprietorship, Mr. Feivou contacted Mr. Glasco about the possibility of going into business together.  (*Id.* at PageID 747.)  Mr. Feivou chose to team up with Mr. Glasco, a former Union president and ironworks businessowner.  (*Id.*)  In fact, Mr. Glasco's business also failed after a short stint.  (*Id.* at PageID 782.)  Like Mr. Feivou, Mr. Glasco's company—Precision Iron Works— owed Union benefit funds and agreed to a payment plan with the Union.  (*Id.* at PageID 795–96.)

The two men formed Elite Iron Works, LLC ("LLC") as a limited liability company in early 2019, with each owning a 50% stake. (*Id.* at PageID 749, 786.) They divided the tasks for the new company, and they still run it the same way. Mr. Feivou primarily handles administrative tasks like tracking expenses, invoicing clients, and overall financial administration. (*Id.* at PageID 787.) And Mr. Glasco focuses on customer relations, project estimation, and management, and supervision of the company's day-to-day operations. (*Id.* at PageID 786.) Mr. Glasco's uncontroverted testimony at trial distinguishes his role from that of Mr. Feivou: Mr. Glasco serves as LLC's "chief operating officer," and Mr. Feivou is the "chief financial officer." (*Id.* at PageID 788.) Whereas Mr. Feivou and Mr. Glasco were the sole manager and decision maker in all operations for their former businesses, they were able to split these responsibilities at LLC. (*Id.* at PageID 788.) What is more, along with Mr. Feivou and Mr. Glasco, Alex Cook ("Mr. Cook")—who worked as a union journeyman ironworker with EIW— serves as a supervisor at LLC. (*Id.* at PageID 763, 771.)

True enough, LLC lists 88 Rae Drive as its address of record—the same address as EIW. (*Id.* at PageID 750.) But after LLC's founding in early 2019, Mr. Feivou and Mr. Glasco worked out of Mr. Glasco's home at 8181 Walnut Creek Road, Cordova, Tennessee. (*Id.*) The company later acquired office and fabrication space in June 2019. (*Id.* at PageID 752.) Since its founding, LLC has employed forty-seven people, three of whom were also employed by EIW. (*Id.* at PageID 792.)

The types of projects LLC handles are materially different from EIW's projects. LLC successfully bid on larger scale contracts that EIW could not complete. This is because Mr. Glasco employed a unique approach to bidding on jobs. Typically, an iron working contractor is responsible for buying the materials on the front end and adding a 10% markup when the project

if finsihed.  When he was running EIW, Mr. Feivou could not do large scale projects as he would have had to "provide all the material . . . on the front end," and bill the customer later.  (*Id.* at PageID 737.)  This required capital that EIW simply did not have.  (*Id.*)

At LLC, Mr. Glasco secured bigger jobs by convincing the contractors to buy the material and avoid any later markup.  This amounted to a discount for contractors who covered the upfront cost of materials for large projects.  (*Id.* at PageID 756.)  Mr. Feivou described this as a "tactic that [he had] never really considered before," and it "definitely changed the scale of projects" LLC could do.  (*Id.* at PageID 754–757.)  With Mr. Glasco's innovation—having customers absorb the cost of materials upfront in exchange for discounted labor—LLC was able to pursue larger contracts, including one worth roughly $500,000.  (*Id.* at PageID 757.)  This pricing structure transformed whatever business model LLC may have inherited from EIW.  It allowed LLC to pursue large-scale structural beam projects that were simply beyond EIW's capacity.  (*Id.* at PageID 756–57.)

Since its formation, LLC has acquired new and more sophisticated equipment to accommodate its new operational scale.  For example, it has obtained eight engine-powered welding machines, several wired welding machines, a number of different hand tools, ladders, and trailers that are worth about $180,000.  (*Id.* at PageID 756.)  Unlike EIW which operated from Mr. Feivou's garage, LLC moved to a fabrication shop that housed all this equipment and provided the space for steel processing.  (*Id.* at PageID 739, 752–53.)  Mr. Feivou's and Mr. Glasco still use their personal trucks at LLC.  (*Id.* at PageID 768.)  LLC has serviced forty-seven customers since its inception in 2019—three of whom were EIW customers, accounting for about 5% of the LLC's total business.  (*Id.* at PageID 749.)

### 1.     The IMPACT Lawsuit

Before they joined forces to operate Elite Iron Works, LLC, Mr. Feivou and Mr. Glasco each took a Union-sponsored business operations training course from the Ironworker Management Progressive Action Cooperative Trust ("IMPACT") Fund, the Union's training arm.  (ECF No. 58 at PageID 674–76; ECF No. 59 at PageID 760, 782.)  Before taking the course, they also agreed that they would remain Union contractors for ten years.  (*Id.*)  In early 2019, Mr. Feivou asked Mr. Cole if LLC could enter a "one-job agreement" with the Union that would allow LLC to act as a Union contractor temporarily for a single job.  (ECF No. 59 at PageID 758.)  Mr. Cole rejected Mr. Feivou's request.  (ECF No. 58 at PageID 678.)  He later notified IMPACT that Mr. Feivou and Mr. Glasco had both violated the terms of their business training agreement with IMPACT by operating LLC—a business that did not have a CBA with the Union.  (*Id.*)

In December 2020, IMPACT sued Mr. Feivou, alleging he had started a non-signatory company in violation of their agreement that he remain a Union contractor for 10 years.  (ECF No. 59 at PageID 760.)  Mr. Feivou settled the case by agreeing to pay IMPACT the cost of the business training they had provided him—$10,000.  (*Id.* at PageID 761.)  IMPACT similarly sued Mr. Glasco, and he also agreed to repay the cost of his training.  (*Id.* at PageID 679.)  Plaintiffs then sued Defendants here in March 2021, alleging that LLC is "the alter ego of [EIW] and/or is bound to the Collective Bargaining Agreement" with the Union that Mr. Feivou and Mr. Glasco signed.  (ECF No. 1.)

## CONCLUSIONS OF LAW

I.      **The Alter Ego Doctrine**

When one company assumes the business operations of an old company, the alter ego

doctrine permits courts to consider many factors to decide whether to treat them "as the same

entity when necessary to prevent either of them from manipulating its corporate form to evade its

labor obligations." *Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow

Contracting, Inc.*, 919 F.3d 368, 376 (6th Cir. 2019) (citations omitted.)  This equitable doctrine

binds "an employer to a collective bargaining agreement if it is found to be an alter ego of a

signatory employer." *Trustees of Detroit Carpenter Fringe Benefits Funds v. Industrial

Contracting, LLC*, 581 F.3d 313, 318 (6th Cir. 2009).  Courts can apply this doctrine to a

"double-breasted" operation that consists of apparently distinct entities that are separate only in

form.  *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990).

Alter ego doctrine also applies to a new employer that is "merely a disguised continuance of an

older company." *Southport Petroleum, Co. v. N.L.R.B*, 315 U.S. 100, 106 (1942).

The Sixth Circuit applies this test in a "more relaxed, less exacting fashion than would be

required under federal common law principles." *Fullerton Transfer*, 910 F.2d at 336.  Courts

may also look at "similarities that existed at formation, even though the companies' identities

*diverged* as time went on." *Crossroads*, 178 F.App'x. at 534 (emphasis in original).  But looking

into "events outside immediate formation is entirely consistent with Sixth Circuit and [labor]

Board precedent[.]"  *Id.* (enumerating cases).

The Sixth Circuit's formulation of the alter ego test is a "flexible, balance-striking,

functional analysis." *N.L.R.B. v. Crossroads Elec., Inc.*, 178 F.App'x. 528, 535 (6th Cir. 2016)

(citing *N.L.R.B. v. Fullerton Transfer*, 910 F.2d at 336.)  The test explores whether the two

companies share "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Bourdow*, 919 F.3d at 376.  Courts also consider an employer's "'intent to evade' its labor obligations." *Id.* (quoting *Fullerton Transfer*, 910 F.2d at 336.)  Courts consider all these factors together and "[n]o individual factor is determinative" of a company's alter ego status.  (*Id.*)  The Court now considers these factors.

## ANALYSIS

### I.   The Management Factor Weighs Against an Alter Ego Finding.

The management prong of the alter ego test "looks to the 'nature of the management structure of the two companies,' including overlap in those who 'played a managerial role.'" *Bourdow*, 919 F.3d at 376 (quoting *Road Sprinkler*, 669 F.3d at 795).  Significant differences in management structure between the entities weighs against an alter ego finding.  *See Road Sprinkler*, 669 F.3d at 794–95.

LLC's current management structure suggests that it is not an alter ego of EIW.  The Court finds that while Mr. Feivou remains a significant management presence in LLC, the division of management responsibility made possible by Mr. Glasco's addition to the firm suggests "the nature of the management structure in the two companies is not substantially identical." *Road Sprinkler*, 669 F.3d at 794.  At trial, Mr. Feivou provided uncontroverted testimony that, as the sole proprietor of EIW, he "was trying to do it all by [him]self and [he] couldn't."  (ECF No. 59 at PageID 746.)

As EIW's only manager, Mr. Feivou was responsible for estimating jobs, performing all labor, and collecting payment for work completed.  (*Id.* at PageID 747).  Mr. Feivou also testified that EIW failed largely due to his lack of experience and inability to perform "all of the estimating and everything that's associated with it."  (*Id.* at PageID 746).  On top of handling

estimating work, Mr. Feivou was also "trying to get the jobs going," acting as "a foreman on the job, making sure the jobs were running." (*Id.* at PageID 746–47.)  Mr. Feivou testified that he oversaw all bookkeeping and invoicing at EIW and that he was responsible for every aspect of the business. (*Id.* at PageID 747.)

The Court finds that the management scheme in the LLC is not "substantially identical" from the one in EIW.  Plaintiff claims that adding Mr. Glasco did not alter the business structure between EIW and LLC because he is just one person.  But adding one person resulted in a 50% increase in management personnel.  In the LLC, Mr. Feivou focuses on the administrative part of the business.  He tracks expenses, invoices clients, and oversees the LLC's financial operations. (ECF No. 59 at PageID 787.)  Mr. Glasco joined the LLC to focus on handling customer relations, estimating and managing projects, and supervising the day-to-day operations of the company. (*Id.* at PageID 786.)  At trial, Mr. Glasco credibly testified that, as EIW's sole proprietor, Mr. Feivou would have been responsible for all the duties Mr. Glasco assumed when he joined LLC as a 50% member. (*Id.*)  When asked to describe the management structure at LLC, Mr. Glasco credibly testified that he is the functional head of operations and Mr. Feivou is the head of financial matters. (*Id.* at PageID 788.)

When one compares Mr. Feivou's responsibilities at EIW to his role alongside Mr. Glasco at LLC, the Court finds that "there is minimal similarity in 'the nature of the management structure of the two companies" and little overlap in those who 'played a managerial role.'" *Bourdow*, 919 F.3d at 377.  In *Bourdow*, a similar alter ego case arising from ERISA, the predecessor company was primarily managed by a single officer who, like Mr. Feivou at EIW, "'ma[de] [all of] the ultimate decisions.'"  *Id.* at 376.  The Court in *Bourdow* found the successor company's management structure was not substantially identical to that of the predecessor

because the new entity was managed by three co-owners who all shared managerial responsibility.  *Id.* at 377.

Bourdow* controls in this case rather than *Allcoast Transfer*, another case with similar facts in which the court found two entities were alter egos.  *See* 780 F.2d 576, 581–82 (6th Cir. 1986).  In *Allcoast Transfer*, the person who exclusively managed the predecessor company also held exclusive managerial control of its alter ego successor.  780 F.2d at 582.  Because that same individual was the sole manager of both entities, the court found their management structures to be substantially identical.  *Id.*  The facts here differ from those in *Allcoast Transfer* because Mr. Feivou was EIW's sole manager and decision maker.  (ECF No. 59 at Page ID 747).  As stated above, Mr. Feivou now shares responsibility for managing LLC with Mr. Glasco.  (*Id.* at PageID 788.)

Like the business in *Bourdow*, LLC's management structure is not substantially similar to EIW's.  Mr. Feivou was the exclusive decision-maker at EIW, and is now a co-owner and co-manager of LLC, splitting those responsibilities with Mr. Glasco.  (ECF No. 59 PageID 788).  Thus, the court's analysis in *Allcoast Transfer* does not bear on this case and this Court relies on *Bourdow* as controlling precedent in concluding that this factor militates against an alter ego finding.

## II.    The Supervision Factor Also Weighs Against an Alter Ego Finding.

As with the management factor, the supervision factor looks for overlap of "those who hold supervisory roles."  *Boudrow*, 919 F.3d at 378.  The National Labor Relations Act describes a supervisor as one who exercises "independent judgment" and has authority to "fire, transfer, suspend, lay off," and perform other duties related to the supervision of the company's employees.  29 U.S.C. § 152(11).  Courts may find alter ego status where the same individual

holds a supervisory role in both companies. *See Allcoast*, 780 F.2d at 582 (finding two companies were alter egos where a common supervisor acted through agents at both operations to perform supervisory work). Courts may also find entities are alter egos when all the successor's supervisors held supervisory roles at the predecessor company. *See e.g.*, *Bourdow*, 919 F.3d at 378.

In *Bourdow*, two of the three supervisors at the predecessor company held two of the supervisory positions at the successor company. 919 F.3d at 378. Based on that overlap, the Sixth Circuit found that the two companies' supervisory structures were substantially identical. *Id.* Likewise, in *Allcoast Transfer,* the Sixth Circuit found two companies' supervision was substantially identical where they shared the same supervisor. *Allcoast Transfer*, 780 F.2d at 582. And the Sixth Circuit in *Interior/Exterior Specialist Co.* found two companies had substantially identical supervision where the only supervisor of one company was one of two supervisors at the other. *Interior/Exterior Specialist Co.*, 371 F.App'x at 658.

With this in mind, the Court finds that LLC's supervision is not substantially similar to EIW's. Even though Mr. Feivou is a supervisor common to both entities, LLC has two more supervisors which cuts against an alter ego finding. When asked about LLC's supervisory structure, Mr. Glasco credibly testified that he is a supervisor at the LLC. (ECF No. 59 at PageID 763.) He had no role in EIW. He also provided uncontroverted testimony that LLC now employs Alex Cook as a supervisor. (*Id.* at PageID 771.) Consequently, Mr. Feivou, who comprised 100% of EIW's supervision, is only one-third of LLC's supervisors. This supervisory carryover is less than the 50% overlap in *Interior/Exterior Specialist Co.*, the two-thirds overlap in *Bourdow*, and the 100% overlap in *Allcoast Transfer*. Besides, Mr. Feivou's supervisory authority is also more limited now than it was with EIW where he had 100% responsibility for

12

the sole proprietorship.  For these reasons, the Court finds that this factor weighs against an alter ego finding here.

### III.  The Business Purpose Factor Cuts Against an Alter Ego Finding.

The business purpose factor examines the overlap in the "type of work performed" by the two entities in question.  *Boudrow*, 919 F.3d at 368.  Courts may find a successor company's business purpose is substantially identical as its predecessor when it is "engaged primarily in the same type of work."  *Crossroads*, 178 F.App'x at 533.  Courts can also find that two companies' business purposes are substantially identical when the work they perform is different but not mutually exclusive.  *See Interior/Exterior Specialist Co.*, 371 F.App'x. at 659 (finding two painting companies were alter egos when one focused on public sector painting jobs and the other focused on private sector work).

Even though they are both iron contractors, the evidence supports a finding that EIW and LLC do not have a "substantially identical" business purpose.[3]  EIW was a small-scale, mostly local, sole proprietorship with its most lucrative project bringing in roughly $60,000 in revenue. (ECF No. 59 at PageID 753.)  Because it was run exclusively by Mr. Feivou, who did not have the cash flow necessary to buy the materials for large projects, EIW was limited to seeking small-scale jobs near Memphis.  (*Id.* at PageID 737.)

---

[3] At the summary judgment and trial phases, Plaintiffs pointed out that the entities' names—"Elite Iron Works" and "Elite Iron Works, LLC"—are substantially identical such that the business purpose and customers factors should weigh in their favor.  (ECF No. 62 at PageID 826–27.)  Defendants concede that the names are substantially identical but maintain that an entity's name is not a factor under the Sixth Circuit test.  (ECF No. 58 at 598.)  The Court agrees with Defendant.  Moreover, the Court finds that in weighing the business purpose factor, the fundamental shift between LLC's and EIW's business models outweigh the shared name similarity here.

LLC is a significantly larger business than EIW.  At LLC, Mr. Glasco secured large-scale jobs by offering a discount if the contractor agreed to cover upfront materials costs—a strategy which allowed LLC to perform work EIW could not have completed.  (*Id.* at PageID 756.)  To date, the biggest job LLC secured was worth about $500,000, a marked departure from EIW's best grossing venture.  (*Id.* at Page ID 757.)  EIW's business purpose, in short, was limited to completing work Mr. Feivou "could financially handle doing."  (*Id.* at PageID 737.)  This work included "smaller jobs, like handrail jobs" and other projects that "didn't require a lot of money on the front end."  (*Id.*)  So EIW's geographic reach was "mostly in the Memphis area, some [jobs] in Arkansas."  (*Id.* at PageID 754.)

LLC's business is also larger geographically than EIW.  Besides Memphis, LLC takes on projects in Nashville, Mississippi, and Florida.  (*Id.* at PageID 755.)  As Mr. Feivou credibly testified, LLC can complete bigger jobs—large scale structural and beam work that EIW could never do.  (*Id.* at PageID 753–56.)  Mr. Feviou also testified that the scale of these projects, made possible through Mr. Glasco's pricing scheme, departs from the work EIW was performing.  (*Id.* at PageID 757.)

Because of Mr. Glasco's approach to bidding jobs, LLC performed work that was not only of a different nature than EIW's, but it was also over eight times as lucrative as the highest-grossing project EIW completed.  This fundamental difference in the size and scope of the iron work projects weighs against a conclusion that the business purpose of the two companies is substantially identical.  Although it is a closer question than the other factors, the Court finds that LLC's business purpose is not substantially identical to EIW's.

**IV.     The Operations Factor Weighs Against an Alter Ego Finding.**

The operations factor considers the "'continuity of work force'—*i.e.*, whether the new company 'attracted … employees of its own' or 'employed a number of former employees of [the older company].'" *Boudrow*, 919 F.3d at 377 (quoting *Road Sprinkler*, 669 F.3d at 795). This factor also considers "continuity of work space." *Bourdow*, 919 F.3d at 377.  Significant continuity of work force and work space both support an alter ego finding.  *Compare id.* (finding alter egos where five of a successor company's eight employees worked at the previous company) *with Road Sprinkler*, 669 F.3d at 795 (holding that two companies were not alter egos where only two of a successor company's fourteen employees worked for the previous company).

The Court finds that there is little, if any, continuity of work force or work space between EIW and LLC.  Mr. Feivou's testimony showed that, of the forty-seven to fifty people LLC has employed over its existence, no more than three worked for EIW.  (ECF No. 59 at PageID 792.) This carryover (roughly 6%) is lower than the two of fourteen figure (around 14%) that weighed against an alter ego finding in *Road Sprinkler*, and the five of eight number (about 63%) that pointed to alter ego status in *Bourdow*.  Because of LLC's minimal use of former EIW employees, LLC's work force is not significantly continuous with EIW's.

But EIW's workspace does overlap with LLC's to a small degree.  Mr. Feivou ran EIW out of his home, as he had no other workspace or fabrication site.  (ECF No. 59 at PageID 739). Upon LLC's founding in early 2019, Mr. Feivou and Mr. Glasco continued to list Mr. Feivou's home address as the business address.  But they worked primarily out of Mr. Glasco's home before acquiring some office and fabrication space after a few months.  (*Id.* at PageID 750).  At

trial, Mr. Glasco testified that, because Mr. Feivou's wife operates a daycare from their home, LLC never completed any ironwork there.  (*Id.* at PageID 789.)

The court in *Bourdow* found there was no continuity of workspace between two companies where one operated from an individual's home and the other from an office building. 919 F.3d at 377.  The facts here closely track those in *Bourdow*, as EIW operated from Mr. Feivou's home and LLC used his address for business correspondence at first, before it secured office space a few months later.  *See also Road Sprinkler*, 669 F.3d at 795 (finding no continuity of workspace where two entities operated out of separate office spaces).  The Court finds therefore that the overlap in work space between EIW and LLC does not rise to the level of substantially identical.[4]  So, the operations factor weighs against an alter ego finding.

## V.    The Equipment Factor Cuts Against an Alter Ego Finding

Courts applying the equipment factor "look[] to whether the new company acquired any of the older company's equipment, and if so, whether the acquisition was an arm's-length transaction."  *Bourdow*, 919 F.3d at 378.  If the new company uses equipment it obtained from the old company, the question is how much of the new company's equipment is made up of the old company's equipment.  *See Road Sprinkler*, 669 F.3d at 796 (finding two companies were not alter egos where the successor company obtained an "insubstantial" amount of the former company's equipment after it had gone out of business).  Courts are likely to find alter ego status when a new company receives a substantial amount of its equipment from a previous company.

---

[4] While Mr. Feivou listed his home address at 88 Rae Drive as the official address for EIW and LLC still lists it, this fact alone is not dispositive in finding substantial similarity between the entities.  As already discussed, Mr. Feivou did most of the EIW's work at his home while LLC performed its work at their office and fabrication space.  There is clear overlap in that both entities share the same address of record.  But the Court finds that this overlap is not significant enough as to justify a finding that the entities' operations are substantially identical.

*See Crossroads Elec.*, 178 F.App'x at 534 (holding that a successor company was an alter ego where it acquired most of the older company's equipment for free).

The Sixth Circuit's application of the equipment factor is straightforward.  In *Allcoast Transfer*, the Sixth Circuit found that a successor company's equipment was substantially identical to that of its predecessor where the successor "primarily obtained its equipment" from its predecessor.  780 F.2d at 582.  In *Crossroads*, the Sixth Circuit also found a substantial identity of equipment between predecessor and successor companies where the predecessor gave to the successor five trucks and electrical equipment "without any money ever changing hands."  178 F.App'x at 533.  In contrast, the Sixth Circuit found in *Road Sprinkler* that the overlap between two companies' equipment was insubstantial where the predecessor entity provided the successor "a limited number of tools and three pickup trucks," after the predecessor company "went out of business."  669 F.3d at 796.

The Court finds that the equipment factor does not weigh toward an alter ego finding. Even though EIW provided its equipment to LLC, that equipment did not amount to a significant portion of LLC's equipment because LLC obtained much more.  Based on undisputed trial testimony, EIW's equipment included one $4,000 welding machine and roughly $1,000 of hand tools.  (ECF No. 59 at PageID 740.)  This inventory also included Mr. Feivou's personal pickup truck.  (*Id.* at PageID 768.)  LLC certainly used this equipment in the beginning, but LLC has since added "eight engine-powered welding machines" and "several wired welding machines." (*Id.* at PageID 790.)  And LLC also has "a lot of different hand tools, ladders, [and] trailers" that, taken with the welding machines, are worth about $180,000.  (*Id.* at PageID 756).  LLC's equipment includes Mr. Feivou's personal truck and Mr. Glasco's personal truck.  (*Id.* at PageID 768.)  While LLC's use of Mr. Feivou's truck and $5,000 worth of EIW equipment shows some

equipment carryover to the LLC, this overlap falls short of the Sixth Circuit's standard for substantial similarity.

Plaintiffs contend that there was no arm's length transaction transferring equipment from EIW to LLC.  But as in *Road Sprinkler*, LLC received only some equipment from a defunct EIW—a sole proprietorship owned by LLC's new 50% owner.  Simply put, LLC's acquisition of EIW's single truck and welding machine tracks closely with *Road Sprinkler* when the defendant received just some of its equipment from a defunct predecessor company.

While LLC absorbed all EIW's equipment, as was the case in *Crossroads*, Mr. Glasco testified that the single welding machine LLC received from EIW was not "an important piece of equipment" for LLC and that the LLC would still have been able to function without it.  (ECF No. 59 at PageID 790–91).  And so LLC's receipt of all EIW's equipment is insignificant compared to the quantity of equipment shared between alter egos in *Crossroads*, where a small electrical contracting company received five trucks and electric equipment from a predecessor company..  The equipment carryover from EIW to LLC also falls far short of the threshold of substantial identity in *Allcoast Transfer* where the successor company primarily obtained its equipment from the predecessor.  The Court therefore finds that LLC's equipment is not substantially identical to EIW's.[5]

## VI.    The Customers Factor Weighs Against an Alter Ego Finding

The customers prong of alter ego analysis examines the "overlap in 'customer base' and 'customers.'"  *Bourdow* 919 F.3d at 378 (quoting *Road Sprinkler*, 669 F.3d at 796).  In

---

[5] Plaintiffs proffered evidence that Mr. Feivou's truck still had a Union magnet on it and that LLC still uses EIW's original email address of elite.ironworks167@gmail.com.  (ECF No. 59 at PageID 767–69.)  These facts certainly point to an overlap in equipment—but not substantial identity to favor imposing EIW's obligations unto LLC.

evaluating customer overlap, courts generally consider the number of customers imported from a previous business to its successor and are likely to find alter ego status when customer carryover is significant.  *Compare Bourdow*, 919 F.3d at 378 (holding two trucking companies were alter egos where a previous company served 15 of the successor company's 22 customers) *with Road Sprinkler*, 669 F.3d at 796 (holding two entities were not alter egos where 9 of the new company's 250 customers were customers of the former company).

The Court finds that neither LLC's customers nor its customer base are "substantially identical" to EIW's.  At trial, Mr. Feivou testified that, of the 47 customers LLC has served since 2019, EIW served only 3.  (ECF No. 59 at PageID 749–50.)  So, roughly 6% of LLC's customers were once EIW customers.  This figure tracks closely with the roughly 4% carryover in *Road Sprinkler* that the Sixth Circuit found to be minimal enough to weigh against an alter ego finding.  Moreover, the geographical differences between the two entities' customer bases are significant.  As already discussed above, EIW's geographic reach was limited to the Memphis area while LLC can tackle projects in Nashville, Mississippi, and Florida.  For these reasons, the Court finds that this factor favors Defendants.

## VII.   The Court Finds No Evidence of Intent to Evade Labor Obligations.

The next factor "looks to 'evidence of intent on the part of the two companies to avoid the effect of the collective bargaining agreement' or their other labor obligations." *Bourdow*, 919 F.3d at 379 (quoting *Road Sprinkler*, 669 F.3d at 769.  To find evidence of intent, courts can consider the circumstances of a business's cessation and its successor's inception to determine whether a defendant undertook its transformation to "retain the benefits" of union membership "without having to retain its liabilities." *Bourdow*, 919 F.3d at 379 (citing *Road Sprinkler*, 669 F.3d at 796).

The Court finds that evidence here does not suggest EIW reorganized as LLC to evade its obligations to the Union while enjoying its benefits.  As a Union signatory, EIW's revenue totaled roughly $80,000 in the third quarter of 2018, and only $35,000 in the fourth quarter of the same year.  (ECF No. 59 at PageID 744–45.)  Mr. Feivou testified that the sole proprietorship owed about $10,000 in Union dues, a sum that he could not afford and had to pay back under an installment plan.  (*Id.*).  In the fourth quarter, Mr. Feivou elected not to use any union labor, incurring no additional obligation.  (*Id.* at PageID 745.)  Mr. Feivou credibly testified that, in early 2019, he recognized that he was over his head.  His one-man operation was going under and so he decided to start a business with Mr. Glasco.  (*Id.* at PageID 747.)

The Court finds that these facts do not suggest an intent to form LLC to enjoy the benefits of Union membership while shirking its obligations.  EIW was operating at a net negative after employing exclusively union labor.  And Mr. Feivou credibly testified that, at the end of 2018, EIW owed delinquent Union dues.  So he entered into a payment plan to satisfy those obligations.  (*Id.* at PageID 745.)

Without question, Mr. Feivou made no secret of LLC's existence, and that LLC intentionally did not sign the CBA.  To that end, he contacted Mr. Cole after the LLC's formation to ask about possibly entering a "one-job agreement"—a temporary arrangement allowing a non-Union contractor to use Union labor for a single job.  (*Id.* at PageID 758.)  Simply put, Mr. Feivou was forthright with Mr. Cole in telling him that EIW is defunct, that LLC is a "new company with a new EIN number," and that LLC was not a Union contractor.  (*Id.* at PageID 758–59.)  The Court takes this transparent attempt to work out a one-off deal with the Union as evidence that LLC openly disavowed any association with EIW—undermining the notion that LLC was attempting to avoid its labor obligations.

20

Of course, Plaintiffs correctly note that EIW never provided written notice of its termination of its Union contract.  But the Court also rejects Plaintiff's attempt to invoke an equitable doctrine to impose EIW's obligations onto LLC.  Beyond Mr. Feivou's exchange with Mr. Cole regarding the one-job agreement, the IMPACT lawsuit bolsters the Court's conclusion that Mr. Feivou did not form LLC to evade EIW's Union obligations.

First, Plaintiffs[6] argued in the IMPACT lawsuit that LLC is a not a Union contractor.  The Court finds that Mr. Cole cannot credibly claim here that he really considers LLC to be a Union contractor.  He acknowledged that he notified IMPACT that LLC was Mr. Feivou's new non-Union business.  (ECF No. 58 at PageID 678.)  And, because Mr. Feivou had signed a Union contract, LLC was violating the terms of Mr. Feivou's contract with IMPACT.[7]  (*Id.*)  IMPACT then sued Mr. Feivou—using the same counsel representing Plaintiffs in this case—in state court for the $10,000 cost of the training.  It argued that LLC was a non-Union business in violation of Mr. Feivou's contract with IMPACT.  (Trial Ex. 12.)

At bottom, Mr. Cole and the other Plaintiffs took conflicting positions on a central issue: in the IMPACT suit, they claimed that LLC was a non-union signatory and here, they claim that LLC is a union signatory.  These conflicting positions trouble the Court as Plaintiffs invoke an equitable doctrine to impose further liability on Defendants.

---

[6] Mr. Cole testified during trial that IMPACT is a part of the Union that provided Mr. Feivou and Mr. Glasco training on how start a business.  (ECF No. 58. At PageID 673–74.)  He also testified that the Union collects fees from Union contractors to pay IMPACT, which helps with training and drug testing personnel.  (*Id.*)

[7] IMPACT provided Mr. Feivou and Mr. Glasco business operation training on the condition they would pay back to IMPACT the cost of the training ($10,000) if their businesses became non-signatory employers sooner than ten years after incorporating as a signatory company.  (*See* ECF No. 59 PageID 673–74; Trial Ex. 12.)

Second, the Parties agree that Mr. Feivou paid IMPACT $10,000—an acknowledgment that LLC is not a Union contractor.  (ECF No. 58 at PageID 678–80.)  They also agree that Mr. Glasco—who had the same contract with IMPACT as Mr. Feivou—is paying the same amount to IMPACT for starting a non-Union business.  (*Id.*)  In other words, from the demise of EIW to the formation and later operation of LLC, Mr. Feivou acknowledged and satisfied his obligations to the Union.  He paid $10,000 to settle EIW's obligations for Union benefits, and another $10,000 for breaching his contract with IMPACT.   The Court finds that these facts undermine the notion that Defendants formed LLC to evade obligations under CBA.  Instead, they show that Mr. Feivou tried to satisfy his obligations to the Union and start fresh with the LLC.

## VIII.   The Ownership Factor is Indeterminate.

The ownership factor "looks to overlap in those with an ownership interest."  *Bourdow*, 919 F.3d at 379 (citing *Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d at 794–95 (6th Cir. 2012); *Crossroads Elec., Inc.*, 178 F.App'x at 533).  A significant overlap of ownership interest points to an alter ego finding, while "some overlap" in ownership could "weigh[] slightly in favor of imposing alter ego liability."  *Trustees of the Painters Union Deposit Fund v. Interior/Exterior Specialist Co.*, 731 F.App'x 654, 660 (6th Cir. 2010).

There is some overlap of ownership between EIW and LLC.  Obviously Mr. Feivou was the sole proprietor of EIW, and he now owns 50% of LLC. (ECF No. 59 at PageID 749).  He and Mr. Glasco have equal stakes in LLC.  (*Id.* at PageID 758).  The facts here exist in something of a twilight zone under Sixth Circuit precedent.  The Sixth Circuit has held that two companies were not alter egos where they had no common owner.  *See Road Sprinkler*, 669 F.3d at 794–95.  It also held two entities were alter egos where owners with a twenty percent share of a previous

company assumed a roughly two-thirds ownership stake of a successor company.  *See Bourdow*, 919 F.3d at 379.  Because this overlap is 50%,— rather than 100% or none—it has limited probative value.[8]  The Court thus finds that this factor alone is indeterminate and is "merely one of the relevant factors" that the Court must consider along with the test's other prongs.  *Allcoast Transfer*, 780 F.2d 576 at 581.

## DEFENDANT'S REQUEST FOR ATTORNEY'S FEES AND COSTS

In their proposed findings of fact and conclusions of law, Defendants argue that the Court should award attorney's fees and costs to them as the prevailing party under 29 U.S.C. § 1132(g).  (ECF No. 63 at PageID 846–47.)  The Court gives Defendants through August 4, 2023, to elaborate on their position.  Plaintiffs have until August 11, 2023, to respond.  Each brief is not to exceed ten pages.

## CONCLUSION

Courts have developed the alter ego doctrine to prevent employers from manipulating their corporate form to evade labor obligations.  This is an equitable doctrine that requires the Court to apply a flexible, balance-striking approach.  At bottom, the Court must decide whether LLC is a disguised continuance of EIW such that it should treat the two companies as the same.

---

[8] Accounting for the ownership factor is not an exact science.  The Sixth Circuit in *Bourdow* held that an increase in ownership interest from one company to another (an increase of 20% to 60%) weighed in favor of finding alter ego status.  919 F.3d at 380.  In *Crossroads Electric*, the Sixth Circuit found two companies to be alter egos where there was no change in ownership.  178 F.App'x at 533.  It is unclear as to where Mr. Feivou's 100% to 50% reduction should fall in assessing this factor.  "The essential inquiry under an alter ego analysis is '[w]hether there was a bona fide discontinuance and a true change of ownership.'"  *Allcoast Transfer*, 780 F.2d at 581 (citing *Southport Petroleum v. N.L.R.B.*, 315 U.S. 100, 106 (1942).  This point, taken with the Sixth Circuit's insistence on a flexible, balance-striking approach to the alter ego analysis, suggests that the ownership is not dispositive and that the Court must consider it along with the other evidence available.

The Court finds that seven of the Sixth Circuit's eight factors weigh toward the conclusion that LLC is not a disguised continuance of EIW.  EIW was a struggling one-man business that ultimately failed, and Mr. Feivou sought out Mr. Glasco's experience and expertise to retool LLC.   No doubt there is some operational similarity and equipment carryover from EIW to LLC.  But the standard for this equitable doctrine requires more than some similarity.

The upshot is that LLC's new pricing scheme and management structure with two co-owners transformed the business.  LLC reached a scale that would have been otherwise inaccessible to EIW.  Weighing the evidence, the Court finds that Plaintiffs failed to meet their burden of showing that the two companies are substantially identical under Sixth Circuit precedent.  What is more, Plaintiffs polar positions in separate lawsuits against Defendants render their invocation of an equitable doctrine here problematic.  The Court therefore rules for **DEFENDANTS**.

**SO ORDERED**, this 27th day of July, 2023.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE